IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OTIS THOMAS, <br><br> Plaintiff, <br><br> v. <br><br> IMAM ABDUL MALIK SAAFIR, et al., <br><br> Defendants. | No. C 06-0184 MMC (PR) <br><br> **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** <br><br> (Docket No. 16) |

On January 11, 2006, plaintiff, a California prisoner then incarcerated at Salinas Valley State Prison ("SVSP") and proceeding pro se, filed the above-titled civil rights action under 42 U.S.C. § 1983, alleging he had been denied the right to attend religious services. On May 11, 2006, the Court found plaintiff had stated cognizable claims under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") against SVSP defendants Imam Abdul Malik Saafir ("Saafir"), Sergeant M. J. Kircher ("Kircher"), and Captain G. Ponder ("Ponder"); the Court ordered the complaint served on those defendants. On June 13, 2006, plaintiff filed a First Amended Complaint ("FAC"), alleging defendants were continuing to deny him the right to attend religious services. On June 30, 2006, after reviewing the FAC, the Court found plaintiff had stated cognizable claims against Saafir, Kircher, and Ponder for the ongoing violation of plaintiff's rights under

the First Amendment and RLUIPA. The Court ordered defendants to file a dispositive motion, or, alternatively, a notice that they were of the opinion the claims in the FAC could not be resolved by such a motion. Now before the Court is defendants' joint motion for summary judgment. Plaintiff has filed an opposition to the motion, and defendants have filed a reply.

## **FACTUAL BACKGROUND**[1]

Plaintiff was at all times relevant to the complaint a practicing Muslim (FAC at 2), and was housed in Facility C at SVSP. (Decl. Capt. Ponder Supp. Defs.' Mot. Summ. J. ("Ponder Decl.") ¶ 5.) Facility C is a "Level IV 180" housing unit at SVSP. (Id.) Level IV 180 prisoners have a history of assaultive behavior and disciplinary action, gang-related convictions, convictions under California's "Three Strikes Law," prison sentences for a term of life without parole, or a determinate sentence of fifty years or more. (Id.) These prisoners require the highest level of security of all inmates at SVSP. (Id.) Level IV 180 prisoners are not allowed to be unsupervised at any time; allowing Level IV 180 prisoners to gather unsupervised would risk a breach in the safety and security of the institution, and place prisoners and staff at risk of physical injury. (Id.) Pursuant to SVSP's Operational Procedures, no organized religious activity will occur at SVSP unless there is "immediate and direct supervision of inmates participating in religious activities." (Defs.' Req. Jud. Not. Ex. A.)[2]

Defendant Saafir served as the Muslim Chaplain at SVSP from November 19, 2001 to January 15, 2005. (Decl. Imam Saafir Supp. Defs.' Mot. Summ. J. ("Saafir Decl.") ¶ 3.) As the Muslim Chaplain, Saafir was responsible for providing spiritual guidance to prisoners, conducting Islamic religious services and instruction, and scheduling and conducting religious programming and activities. (Id. ¶ 4.) Saafir had regular office hours in Facility C

---

[1] Except where otherwise noted, the facts set forth in the background section are not disputed by the parties.

[2] Pursuant to Federal Rule of Evidence 201, the Court grants defendants' request that the Court take judicial notice of SVSP's Operational Procedure 24, Inmate Religious Programs, which is attached to defendants' request as Exhibit A.

2

from 7:00 a.m. to 3:00 p.m., Tuesday through Saturday. (Id. ¶ 5.) During these office hours, Saafir was available for consultation with SVSP prisoners seeking counseling or discussion about the Islamic religion and its tenets. (Id.) Additionally, Saafir conducted religious classes one day per week in each of the four facilities at SVSP. (Id.)

A follower of the Muslim faith prays five times a day, each day of the week. (Id. ¶ 6.) On Fridays, the second prayer of the day, the Dhur prayer, is performed with a congregation of other followers of the Muslim faith. (Id. ¶ 7.) This prayer is called the Jumu'ah, or congregation, prayer, because Jumu'ah means "congregation of worship." (Id.)

According to Saafir, there is no compulsion or requirement in the Muslim faith that any prayer be performed with a group. (Id. ¶ 6, 7.) Consequently, Saafir maintains, if a follower of the Muslim faith is unable to congregate for the Jumu'ah prayer, he may perform the Dhur prayer alone, and practicing the Muslim faith in this manner would not result in a sin or other religious penalty. (Id. ¶ 7) According to plaintiff, however, the Muslim faith requires him to participate in Jumu'ah services with other Muslims every Friday. (FAC at 6.) Plaintiff states his inability to attend Jumu'ah services created impediments that prevented him from practicing and performing the duties of his faith. (FAC at 7.)

Jumu'ah prayer is to take place at a specific time following the zenith of the sun, at approximately 12:30 or 1:00 p.m., depending on the time of year. (Saafir Decl. ¶ 8.) Jumu'ah prayer takes at least forty-five minutes to complete. (Id.) While serving as the Muslim Chaplain at SVSP, Saafir led the Jumu'ah prayer each Friday at one of the four SVSP facilities, Facilities A, B, C, and D. (Id.). Because it was physically impossible for Saafir to visit each of the four facilities on Friday and perform the Jumu'ah prayer service at the required time, Saafir would alternate between each of the four SVSP facilities, visiting each facility one Friday per month to perform the Jumu'ah services. (Id.)

On December 3, 2004, plaintiff filed an inmate appeal at the informal level of review, in which he complained that from November 19, 2004 to December 3, 2004, Saafir had not come to Facility C to perform Friday religious services. (Ponder Decl. Ex. A at 11.) Saafir interviewed plaintiff regarding the appeal, and explained to him that the Facility C Captain

3

and staff were not allowing services to be held when Saafir was unavailable, because staffing was inadequate to secure the chapel. Consequently, Jumu'ah services would only be conducted on the third Friday of each month by Saafir. (Id.)

Plaintiff next filed an appeal at the first level of review, claiming that because attending Jumu'ah services was a religious obligation for all Muslims, prisoners should be allowed to attend Jumu'ah services even if Saafir was not available to conduct the services. Plaintiff requested an inmate minister be allowed to conduct the services in Saafir's stead. (Id. at 8.) Defendant Kircher, a Correctional Sergeant, interviewed plaintiff regarding the appeal. On January 21, 2005, Kircher denied the appeal, based on SVSP Operational Procedure 24, section 24.1, which states in part that no organized religious activity will occur at SVSP unless there is "immediate and direct supervision of inmates participating in religious activities." (Id.; Defs.' Req. Jud. Not. Ex. A.) Kircher also denied the appeal on the basis of California Code of Regulations, title 15 section 3211(a), which provides:

> When a chaplain of a particular faith cannot be obtained to conduct services within a facility housing inmates of that faith, the institution head may at their discretion and subject to such controls reasonably required for facility security, designate a qualified inmate to minister to the religious needs of inmates for that specific faith. In determining the qualifications of an inmate to conduct such services, the institution will, whenever possible, seek the advice and counsel of outside religious leaders of that faith.

(Ponder Decl. Ex. A at 8, 10.)

Plaintiff next filed his appeal at the second level of review. Defendant Ponder, a Correctional Captain, was assigned to investigate the appeal. (Id. at 3.) On February 14, 2005, the appeal was denied by Lt. Scribner, the Chief Deputy Warden at SVSP. (Id. at 5.) Relying upon SVSP's Operational Procedures, the California Code of Regulations, and the Department Operations Manual, Scribner responded to the appeal as follows:

> The appellant's request to be allowed to attend Islamic services without the Chaplain present would place inmates and staff at risk and jeopardizes institutional security. Inmates housed on Level-IV 180 Designated Housing are not allowed to be unsupervised at any time. Therefore, this portion of the appeal request is denied.
>
> As a temporary remedy, the appellant was advised that the Muslim Community on Facility-C has been provided with the approval to identify two Inmate Spiritual Leaders, one for Facility-C Yard #1 and one for Yard #2. The

4

> appellant was provided the opportunity to speak to the Facility-C Muslim Community on both Yard #1 and Yard #2 to advise them of this temporary measure to resolve this issue until a Muslim Chaplain can be hired or a Muslim volunteer from the outside community can be found by the institution.

(Id. at 4-5.)

Plaintiff pursued his appeal to the final level of review, the Director's Level of review. On September 12, 2005, the appeal was denied by N. Grannis, Chief of the Inmate Appeals Branch, who concluded, in light of the facts developed at the first and second levels of review, that the Jumu'ah prayer was being afforded to prisoners "according to departmental policy, institutional security, facility resources, and reasonable penological interests," and that there was no evidence SVSP was preventing prisoners from practicing their religious beliefs within the confines of their cells. (Decl. T. Emigh Supp. Defs.' Mot. Summ. J. ("Emigh Decl.") Ex. B.)

## DISCUSSION

A. Legal Standard

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See id.

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Anderson v. Liberty Lobby, 477 U.S. at 248 (holding fact is material if it might affect outcome of suit under governing law; further holding dispute about material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

5

1 party"). The moving party bears the initial burden of identifying those portions of the record
2 that demonstrate the absence of a genuine issue of material fact. The burden then shifts to
3 the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the
4 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts
5 showing that there is a genuine issue for trial.'" See Celotex, 477 U.S. at 324 (citing Fed. R.
6 Civ. P. 56(e)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if, as to any given fact, evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

B.    Analysis

   1.    Injunctive Relief Claims

When plaintiff filed his FAC, he was incarcerated at SVSP and alleged the ongoing denial by defendants of his ability to attend Jumu'ah services. He sought both injunctive relief and monetary damages. Plaintiff currently is incarcerated at Centinela State Prison. Accordingly, as the injunctive relief plaintiff seeks no longer can be provided by defendants, plaintiff's claims for injunctive relief will be denied as moot. See Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995).

   2.    Free Exercise Claim

The First Amendment guarantees the right to the free exercise of religion. Cruz v. Beto, 405 U.S. 319, 323 (1972). "The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." O'Lone v. Shabazz, 482 U.S. 342, 348 (1987). In order to establish a free exercise violation, a prisoner must show that the defendant burdened

6

1 the practice of his religion, by preventing him from engaging in conduct mandated by his
2 faith, without any justification reasonably related to legitimate penological interests.
3 Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997).  To reach the level of a constitutional
4 violation, "the interference with one's practice of religion must be more than an
5 inconvenience; the burden must be substantial and an interference with a tenet or belief that
6 is central to religious doctrine."  Id. at 737 (internal quotation and citation omitted).

7      In his FAC, plaintiff alleges that his participation in Jumu'ah services with other
8 Muslims every Friday is a central tenet of his faith.  (FAC at 6, 7.)  He makes the same
9 contention in his opposition to defendants' motion for summary judgment, wherein plaintiff
10 cites to what he asserts is a passage from the Quran, the holy book of Islam, requiring all
11 Muslims to leave work to attend Jumu'ah services, and to an article from an unidentified
12 source (which plaintiff has attached to his opposition as Exhibit A), which describes Jumu'ah
13 as "mandatory" and an "obligation" for Muslims.  (Opp. at 4; Ex. A at 2, 3.)  The assertions
14 in plaintiff's FAC and opposition do not constitute evidence the Court can consider in ruling
15 on defendants' motion for summary judgment, because neither the complaint nor the
16 opposition is verified, and the article plaintiff relies upon is unauthenticated.  See Fed. R.
17 Civ. P. 56(e) (setting forth evidentiary requirements for supporting and opposing summary
18 judgment motion); Fed. R. Evid. 901 (requiring authentication or identification as a condition
19 precedent to admissibility of evidence); see also Schroeder v. McDonald, 55 F.3d 454, 460 &
20 nn.10-11 (9th Cir. 1995) (allowing verified complaint to function as opposing affidavit under
21 Rule 56 if based on personal knowledge and sets forth specific facts admissible in evidence).[3]

22      By contrast, Saafir, in his declaration in support of the motion for summary judgment,
23 attests to the following admissible evidence with respect to plaintiff's allegation that Muslims
24 are required to attend congregational Jumu'ah services:

25      A follower of the Muslim faith performs five prayers per day each day
26 of the week.  Each prayer is divided into two portions; each portion is a rakat.
     The first prayer is the Fajr prayer and is performed before sunrise.  The second

---

28     [3]In the Court's Order of Service of May 11, 2006, plaintiff was advised in detail of the need to submit admissible evidence when opposing a motion for summary judgment.

7

>portion is the Dhur prayer which is performed after the zenith of the sun, which occurs at approximately 12:00 p.m. The Dhur prayer is followed by the Asr prayer, called the "evening" prayer. The fourth prayer is the Magrib prayer performed in the late evening after sunset. The fifth and final prayer is the Isha prayer which is performed just before going to bed. All of the prayers may be performed in a congregation or with other followers of the Muslim faith, but any follower may perform their prayers alone. There is no requirement within the Muslim faith that these prayers be performed with a group. No religious penalty will be incurred for not performing prayer with a group of other followers.
>
>On Fridays, the second prayer of the day, or Dhur prayer, is performed with a congregation of other followers of the Muslim faith. This prayer is then called the Jumu'ah, or congregation, prayer because "Jumu'ah" means "congregation of worship." However, because there is no compulsion or restraint in the Muslim religion, if a follower is unable to congregate for the Jumu'ah prayer, he may simply perform the Dhur prayer. Because many followers of the Muslim faith have commitments during Fridays they are unable to avoid, such as employment, they do not regularly attend Jumu'ah prayer. Instead, these followers practice their religion by performing the Dhur prayer. Practicing the Muslim faith in this manner would not result in a sin or other religious penalty.

(Saafir Decl. ¶¶ 6-7.)

In sum, plaintiff has not put forth admissible evidence sufficient to create a genuine issue of material fact as to whether attending congregational Jumu'ah services every Friday, rather than simply fulfilling the obligation to perform the Dhur prayer every day, is mandated by the Muslim faith. Cf. O'Lone, 482 U.S. at 345 (citing to record therein; finding record established prisoners' sincerely held religious beliefs compelled attendance at Jumu'ah services).

Moreover, even if there were evidence to support plaintiff's allegations that defendants prevented him from engaging in conduct mandated by his religion, no violation of his First Amendment rights can be made out if the restriction was reasonably related to legitimate penological objectives. See id. at 349 (citing Turner v. Safley, 482 U.S. 78, 89 (1987)). The Supreme Court has identified four factors for courts to consider when determining whether a regulation is reasonably related to legitimate penological interests: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact

8

accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives," or, in other words, whether the rule at issue is an "exaggerated response to prison concerns." Turner, 482 U.S. at 89-90.

The task in considering the Turner factors is not to balance the four factors, but, rather, to determine whether the state shows a "reasonable" relation between the policy and legitimate penological objectives, rather than simply a "logical" one. Beard v. Banks, 126 S. Ct. 2572, 2580 (2006). While all justifiable inferences must be drawn in the prisoner's favor with respect to matters of disputed fact, in disputed matters of professional judgment the court's inferences must accord deference to the views of prison authorities. See id. at 2578. Unless a prisoner can point to evidence showing the policy is not reasonably related to legitimate penological objectives, sufficient to allow him to prevail on the merits, he cannot prevail at the summary judgment stage. Id.

Here, with respect to the first Turner factor, defendants assert they were unable to provide plaintiff with access to weekly Jumu'ah services because Saafir could not be at all four SVSP facilities at the same time to conduct services each Friday, and due to the high level of security required for Facility C Level IV 180 prisoners, the prisoners could not gather for Jumu'ah services unsupervised. Plaintiff does not dispute the fact of Saafir's limited availability or the high security needs of Facility C Level IV 180 prisoners. He argues, however, that prison regulations authorized prison officials to designate a qualified inmate to lead the services in place of Saafir, and that Saafir had in fact identified that inmate. (See Opp. at 4; Ex. A at 1.) In response, defendants assert that under prison regulations the designation of an inmate to lead religious services can be done only by the head of the institution, that none of the defendants had the authority to designate an inmate for such purpose, and that, even if defendants did possess such authority, security concerns dictated that Facility C Level IV 180 prisoners be supervised at all times, thereby negating the possibility of inmate-led religious services.

The prison regulation at issue, as noted, provides:

9

> When a chaplain of a particular faith cannot be obtained to conduct services within a facility housing inmates of that faith, the institution head may at their discretion and subject to such controls reasonably required for facility security, designate a qualified inmate to minister to the religious needs of inmates for that specific faith.

Cal. Code Regs., tit. 15 § 3211(a). Because it is undisputed that neither Saafir, Kircher nor Ponder was the institution head at SVSP, none of said defendants can be held liable for failing to designate an inmate to lead the Jumu'ah services.

Further, plaintiff has not presented admissible evidence that calls into question the legitimate security concerns faced by prison officials with respect to Facility C Level IV 180 prisoners, and the rational relationship between refusing inmate-led services and addressing those concerns. See Anderson v. Angelone, 123 F.3d 1197, 1198 (9th Cir. 1997) (holding ban on inmate-led religious activity reasonably related to legitimate security concerns that inmate activities be supervised and religious groups not subvert prison authority). Accordingly, the Court finds defendants have satisfied the first element of the Turner test, in that defendants have shown a logical connection between the policy of not allowing inmate-led religious services for Facility C Level 180 prisoners and the legitimate need for ensuring prison security. See O'Lone, 482 U.S. at 350 (finding policy not allowing inmates to return from outside work detail to attend Jumu'ah services logically connected to prison's legitimate security and administrative concerns).

As noted, the second Turner factor is "whether there are alternative means of exercising the right that remain open to prison inmates." Turner, 482 U.S. at 89-90. In O'Lone, the Supreme Court upheld a prison regulation that precluded prisoners from returning mid-day for Jumu'ah prayer services, where those prisoners were part of a work-gang detailed on assignments outside of the prison. See O'Lone, 482 U.S. at 349. The Supreme Court found that although there were no alternative means for the prisoners to attend Jumu'ah services, the prisoners nevertheless retained their ability to participate in other Muslim religious ceremonies and practices, and that such ability supported the reasonableness of the restriction. Id. at 352-53. Here, even though plaintiff could not attend Jumu'ah congregational services for a number of Fridays, it is not disputed he retained the

10

ability to pray the Dhur prayer on those Fridays, and to practice other aspects of his religion. Accordingly, the Court finds defendants have satisfied the second element of the Turner test.

With respect to the third Turner factor, the evidence before the Court shows defendants' restriction on inmate-led Jumu'ah services was reasonable in light of the impact the accommodation of plaintiff's asserted right to such services would have on the allocation of prison resources generally. According to defendants' undisputed evidence, there was no qualified Muslim Chaplain to preside over Jumu'ah services on a regular basis at Facility C during the relevant time period, and because staffing was inadequate to secure the chapel, prison staff would not allow services to be held when Saafir was unavailable. (See Ponder Decl. Ex. A at 11.) Allowing for inmate-led Jumu'ah services would not have reduced the need for prison officials to allocate prison staff to supervise the services, because Facility C Level IV 180 prisoners must be supervised at all times. Consequently, prison officials could reasonably conclude that such allocation would create staff shortages and lead to problems in other parts of the prison. As to the fourth Turner factor, these difficulties also make clear that there were no "obvious, easy alternatives" to the policy adopted by defendants. See O'Lone, 482 U.S. at 353. Accordingly, the Court finds defendants have satisfied the third and fourth elements of the Turner test.

In sum, for the reasons discussed above, the Court concludes defendants have shown a reasonable relation between their policies of alternating Jumu'ah services at each of the four SVSP prison facilities, and not allowing inmate-led Jumu'ah services at Facility C, and legitimate penological objectives. Accordingly, defendants are entitled to summary judgment on plaintiff's First Amendment claim.

3. RLUIPA Claim

RLUIPA provides that no state may impose a "substantial burden" on a prisoner's exercise of religion unless the action or policy in question provides the least restrictive means of serving a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). In order to state a claim under RLUIPA, the plaintiff bears the burden of coming forward with evidence demonstrating the state's action or policy constituted a substantial burden on his exercise of

11

religion.  Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir. 2005).  The focus of this initial inquiry necessarily is on the manner in which the plaintiff's religious exercise is impacted, rather than on the reasonableness of the facility's policy or regulation.  Id. at 995.

RLUIPA does not define "substantial burden."  See 42 U.S.C. § 2000cc-5.  The Ninth Circuit, however, has held an action or policy constitutes a substantial burden if it constitutes a "significantly great restriction or onus on any exercise of religion, whether or not compelled by, or central to, a system of religious belief of a person, including a religious assembly or institution."  San Jose Christian College v. City of Morgan Hill, 360 F.3d 1024, 1034-35 (9th Cir. 2004) (internal quotations omitted).  As further defined by the Ninth Circuit, a substantial burden "must be more than an inconvenience"; it must prevent the plaintiff "from engaging in [religious] conduct or having a religious experience."  Navajo Nation v. United States Forest Serv., 479 F.3d 1024, 1033 (9th Cir.2006) (internal quotations and citations omitted).

Defendants contend the restriction on plaintiff's ability to attend weekly Jumu'ah services was not a substantial burden on plaintiff's exercise of religion because he was not prevented from practicing his Muslim faith, he was provided with ample opportunities to meet with the Muslim Chaplain for religious education and counseling, and, even if he could not congregate with other inmates to perform the Dhur prayer at Jumu'ah services every Friday, he nevertheless could fulfill his religious obligation by performing the Dhur prayer alone in his cell or elsewhere on Fridays.  In response, plaintiff argues there is no alternative practice that can replace his obligation to attend Jumu'ah services every Friday.

It is undisputed plaintiff was restricted from regularly attending Jumu'ah services, an important practice of the Muslim faith.  Plaintiff has not established, however, that this restriction prevented him from engaging in religious conduct.  Importantly, plaintiff was not prevented from performing the Dhur prayer on Fridays.  Although congregating with other Muslims each Friday to perform the Dhur prayer at a Jumu'ah service might be the preferred way for plaintiff to practice his faith, he has not shown that his inability to do so resulted in a "significantly great" restriction or onus on the exercise of his religion.  Despite the

12

restrictions imposed by SVSP's policy, plaintiff retained his ability to perform his prayers, to attend Jumu'ah services when they were available to him, and to engage in other religious educational and counseling activities. For these reasons, the Court finds plaintiff has not met his burden of coming forward with evidence that SVSP's policy constituted a substantial burden on his exercise of religion. See, e.g., Mohammad v. Beard, 2007 WL 1439051, *10 (W.D. Pa. 2007) (finding denial of prayer rug did not constitute substantial burden on Muslim prisoner's religious beliefs where prisoner showed only it was essential he pray on clean area, not that he pray on prayer rug); Greene v. Solano County Jail, 2006 WL 2067056, *9 (E.D. Cal. 2006) (finding failure to provide group worship services did not substantially burden prisoner's ability to exercise his religion, and effect on prisoner's exercise of religion was "only incidental," where prisoner was not required to act contrary to his religious beliefs, and alternate means remained available to prisoner to exercise his religious beliefs); cf. Warsoldier, (finding prison officials substantially burdened prisoner's religious practice by subjecting him to numerous punishments because he refused to cut his hair).[4]

In sum, plaintiff has not established that SVSP's policies, of alternating Jumu'ah services between the four SVSP facilities and not allowing inmate-led services, substantially burdened the practice of plaintiff's religion under RLUIPA. Accordingly, defendants are entitled to summary judgment on plaintiff's RLUIPA claim.

---

[4] In light of the Court's resolution of plaintiff's RLUIPA claim on the grounds discussed, the Court has not considered whether RLUIPA permits suit against defendants in their individual capacities. Compare Boles v. Neet, 402 F. Supp.2d 1237, 1240 (D. Colo. 2005) (holding RLUIPA actions may be brought against governmental entity but do not appear to be permitted against officials in their individual capacities), with Guru Nanak Sikh Society of Yuba City v. Sutter, 326 F. Supp.2d 1128, 1136 (E.D. Cal. 2003) (holding RLUIPA permits actions against officials at least in their official capacities). Likewise, the Court has not considered whether money damages can be recovered for RLUIPA violations. Compare Boles, 402 F. Supp.2d at 1241 (holding damages not available), with Bess v. Alameida, 2007 WL 2481682, *21 (E.D. Cal. 2007) (holding damages available).

**CONCLUSION**

For the reasons stated, defendants' motion for summary judgment is hereby GRANTED and judgment shall be entered in favor of all defendants.

This order terminates Docket No. 16.

The Clerk shall close the file.

IT IS SO ORDERED.

DATED: September 28, 2007

_____
MAXINE M. CHESNEY
United States District Judge